COMMONWEALTH *VS.* WILLIAM J. MARTIN.

No. 97-P-601.

Bristol. November 10, 1998. - July 8, 1999.

Present: PERRETTA, KASS, & FLANNERY, JJ.[1]

*Child Abuse. Rape. Limitations, Statute of. Practice, Criminal,* Preservation of
evidence, Waiver, Assistance of counsel, Required finding, Instructions to
jury. *Waiver. Evidence,* Admissions and confessions.

At the trial of a 1993 indictment alleging rapes of a child occurring between
October, 1979, and April, 1982, the indictment was not time-barred under
G. L. c. 277, § 63, as amended by St. 1985, c. 123, and St. 1987, c. 489,
where the victim and her mother reported the offenses to police in early
1984, and the indictment was returned in February, 1993, within the ap-
plicable ten-year limitations period. [242]
There was no error in a judge's denial of a criminal defendant's motion to
compel production of police records containing surmised reports of rape by
the victim or, in the alternative, to dismiss the indictment, where there was
no basis in the record for concluding that any such records existed or had
been lost or destroyed and no basis for the defendant's assertion that the
purported records contained information helpful to him. [242-243]
At the trial of an indictment alleging rape of a child on divers dates, defense
counsel's failure to object to an amendment of the indictment to allege
some acts outside the statute of limitations period, which was not a
reasoned tactical decision in a case in which there was a genuine question
of guilt or innocence, was not sufficiently significant in the context of the
trial to make plausible an inference that the result might have been
otherwise but for the error. [243-246]
At the trial of a rape indictment, the defendant's admissions to others were
properly admitted in evidence. [246]
In a criminal case, there was no merit to the defendant's claim that he was
entitled to a required finding of not guilty. [246]
At a criminal trial, the judge's response to the deliberating jury's question was
appropriate. [246]

INDICTMENT found and returned in the Superior Court Depart-
ment on February 24, 1993.

[1]This case was heard by Justices Perretta, Kass, and Flannery. Justice Flan-
nery died before the draft was written and circulated. Justice Jacobs joined the
panel and participated in the decision.

A motion to dismiss was heard by *Walter E. Steele*, J., and the case was tried before *Charles F. Barrett*, J.

*Kenneth S. Mello* for the defendant.

*David B. Mark*, Special Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On appeal from his conviction by a jury on an indictment charging him with forcible rape of a child under sixteen years of age, see G. L. c. 265, § 22A, the defendant argues that the indictment was not brought within the limitation period set out in G. L. c. 277, § 63. He also argues that the trial judge was in error in several of his evidentiary rulings, his denial of the motion for a required finding of not guilty, and his jury instructions. We affirm.

1. *The evidence.* There was evidence to show that, beginning sometime in October 1, 1978, and continuing through April, 1982, the defendant sexually abused the victim on a regular, almost daily, basis. The victim, Jane,[2] was about seven years old when the defendant's abuse of her began. Jane's mother was involved with the defendant, and she and Jane lived with him in his home from 1974 through April, 1983. The abuse would occur while Jane's mother was at work. The defendant warned Jane that he would harm her mother if she did not do as he told her. Because Jane had seen the defendant hit her mother and throw a knife at her, she believed him. She testified that she was in the third grade when the rapes occurred most frequently. She had specific memory of that fact because she liked her teacher and wanted to stay after school with her rather than go home to the defendant. Also, if she went to a neighbor's house after school, the defendant would telephone and demand that she leave for home. Sometimes she would hide in her bedroom closet and read, but, eventually, the defendant would come and find her and demand that she perform oral sex. On at least one occasion, he got on top of her, pinned her arms with his legs, and forced his penis into her mouth. Most times, however, he would hold her by the back of her neck or her hair and force her head up and down on his penis.

Even after she and her mother moved out of the defendant's house in 1983, because of her fear of the defendant and his threats to harm her mother, Jane told no one of the abuse to

---

[2]We use a pseudonym for the victim who was born on November 17, 1971, and was twenty-three years of age at the time of trial.

which she was being subjected. When she was in the seventh grade and saw the defendant standing about the schoolyard gates, she began to skip school. Her mother was notified of her absences, and she asked Jane why she was not attending school. Jane then disclosed to her mother, for the first time, that the defendant had sexually abused her.

2. *General Laws c. 277, § 63.* As originally returned on February 24, 1993, the indictment charged the defendant with offenses occurring between October 1, 1979, and April 30, 1982. As amended by St. 1985, c. 123, effective September 30, 1985, the limitation period set out in G. L. c. 277, § 63, was extended from six to ten years. The amendment applied to offenses that were not time-barred under the earlier version of the statute as of the effective date of the amendment, i.e., to events after September 30, 1979. See *Commonwealth* v. *Bargeron,* 402 Mass. 589, 591-594 (1988). Section 63 was again amended by St. 1987, c. 489, to provide that the ten-year "period of limitation for prosecution shall not commence until the victim has reached the age of sixteen or the violation is reported to a law enforcement agency, whichever occurs earlier." Under the reasoning set out in *Bargeron, supra,* this amendment also would apply to violations occurring after September 30, 1979. See *Commonwealth* v. *Barrett,* 418 Mass. 788, 791 n.3 (1994).

It is the Commonwealth's position that because Jane and her mother reported the violations to the police in the spring of 1984, the indictment was not time-barred. In an attempt to show otherwise, the defendant filed a motion to compel production of police records and reports or, in the alternative, to dismiss the indictment. At the hearing on the motion, the Commonwealth represented that, after attempting to comply with the defendant's request, it could not find any records or reports nor could it ascertain whether such records even had been made and, if so, whether they had been lost or destroyed. Jane and her mother did testify at the hearing, however, that they reported the violations to the police in the spring of 1984. The trial judge denied the motion.

We see no error in the denial of the motion to compel production of police records. The defendant argues that had police records been produced and had they revealed that Jane and her mother had reported the incidents in issue to the police at any time prior to February 24, 1983, he would have been entitled to dismissal of the indictment. Not only does the defendant fail to

make any showing whatsoever that records were made but then lost or destroyed through some negligent or bad faith act of the Commonwealth or its agents, he relies completely upon surmise and speculation, contradicted by the testimony of Jane and her mother, to assert that the records contained information helpful to him. See *Commonwealth* v. *Charles*, 397 Mass. 1, 14 (1986); *Commonwealth* v. *Olszewski*, 416 Mass. 707, 714 (1993), cert. denied, 513 U.S. 835 (1994); *Commonwealth* v. *Waters*, 420 Mass. 276, 279 (1995).

Nor do we see any error in the trial judge's denial of the defendant's alternative request, dismissal of the indictment. The only facts before the trial judge at the time of his ruling were that the indictment alleged crimes committed during a time period commencing as of October 1, 1979, and that Jane and her mother reported the violations to the police in the spring of 1984.

3. *Amendment of the indictment.* "The Appeals Court has authority to consider an issue apparent on the record of a criminal case that is not properly preserved for appellate review and is not argued to it in any party's appellate brief. At the least, it may consider whether the record shows a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967)." *Commonwealth* v. *Simpson*, 428 Mass. 646, 648-649 (1999). There remains a final issue which we take up under the *Freeman* standard of review.[3]

After the trial judge denied the defendant's motion to compel production of police records or to dismiss the indictment and immediately prior to jury impanelment, the Commonwealth moved to amend the indictment to change the date of the commencement of the defendant's crimes against Jane from October 1, 1979, to October 1, 1978. Defense counsel offered no objection to the amendment, and the trial judge allowed the Commonwealth's motion.

By his lack of objection to the amendment, defense counsel waived an affirmative defense. See *Commonwealth* v. *Steinberg*, 404 Mass. 602, 606 (1989); *Commonwealth* v. *Barrett*, 418 Mass. at 792-793; *Commonwealth* v. *Purinton*, 32 Mass. App.

---

[3]After the defendant's trial attorney filed a brief in this court, he was allowed to withdraw his appearance. The defendant then requested and was allowed to file, pro se, a supplemental brief. Although the Commonwealth's brief raises the issue we now consider, the defendant's does not. Present appellate counsel appeared for oral argument only.

Ct. 640, 647 (1992). Consequently, acts that were both within and outside the limitations period were put to the jury.[4] Thus arises the question not argued on appeal, that is, whether defense counsel's waiver of a viable defense against at least some of the violations created a substantial risk of a miscarriage of justice. Three conditions are necessary to a conclusion that such a risk exists. "First, there must be a genuine question of guilt or innocence. . . . Second, the error must be sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error. . . . Third, it must be inferable from the record that counsel's failure to object was not simply a reasonable tactical decision." *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986) (citations omitted).

We will assume without deciding that defense counsel's lack of an objection to the amendment cannot be attributed to a reasoned tactical decision. See *Commonwealth* v. *Barrett*, 418 Mass. at 796, where the court concluded that "[t]rial counsel's failure to move to dismiss the twelve indictments charging indecent assault and battery on a child under the age of fourteen resulted in the admission of a large amount of evidence" which could have influenced the findings on the twelve rape indictments. Compare *Commonwealth* v. *Purinton*, 32 Mass. App. Ct. at 644, where the trial judge found that "[c]ounsel reasonably could have concluded that raising the [limitation] issue would divert the jury's attention from the paramount question of the credibility of the complaining witness and, in the process, actually weaken the strength of defendant's attack on her credibility by combining it with what the jury might view as a defense based on a 'technicality.' " Further, although the defendant chose not to go forward and rested at the close of the Commonwealth's evidence, leaving the issue of guilt or innocence to turn on Jane's credibility, we will characterize the evidence against the defendant, for purposes of decision, as not "overwhelmingly one-sided." *Commonwealth* v. *Amirault*, 424 Mass. 618, 651 (1997).

Having assumed the presence of two of the three factors discussed in *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. at

---

[4]But for the waiver, acts committed between October 1, 1978, and September 30, 1979, the cut-off date by reason of the effective date of the first amendment to G. L. c. 277, § 63, were time-barred.

21, we turn to the question of whether the result might have been different but for the evidence of those violations alleged to have occurred outside the limitations period. On this question, we further assume without deciding that the time-barred offenses would not have been put before the jury to show a "common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive." *Commonwealth* v. *Barrett*, 418 Mass. at 793-794. Instead, we focus on the question whether the evidence of the time-barred violations was "sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error." *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. at 21.

Defense counsel knew the substance of the Commonwealth's case well before trial, and the amendment did not allow it to proceed against him on the basis of a new or different theory. As apparent from the cross-examination of the Commonwealth's witnesses, the theory of defense was that Jane was not credible, that the acts never occurred. Jane did not relate specific dates and times as to "discrete instances when particular acts took place." *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 443, cert. denied, 519 U.S. 1015 (1996). According to her testimony, she was abused on a regular basis throughout the entire time she and her mother resided with the defendant. Whenever Jane's mother was out of the house, the defendant would force Jane to perform fellatio. The Commonwealth placed no emphasis on those acts outside the limitations period and, instead, relied on the *pattern* of abuse of Jane over a four-year time span.[5]

We do not think it plausible to infer that the jury, but for the evidence from the same witness describing the regular commission of acts of the same nature under the same circumstances, were so influenced by Jane's testimony concerning the time-barred acts that they would disregard her testimony concerning the numerous acts committed within the limitations period. Cf. *Commonwealth* v. *Purinton*, 32 Mass. App. Ct. at 645-646. In our view, any possibility that the jury's verdict rests upon evidence of violations committed prior to September 30, 1979, is far too remote "to make plausible an inference that the result

---

[5]The trial judge gave a specific unanimity jury instruction. See *Commonwealth* v. *Conefrey*, 420 Mass. 508, 512-514 (1995).

might have been otherwise but for the error."[6] *Commonwealth
v. Miranda*, 22 Mass. App. Ct. at 21.

4. *Other claims.* We see no abuse of discretion or error of
law in the trial judge's ruling that Jane's mother and the
defendant's son could testify to statements made by him to
them. Those hearsay statements constituted admissions. See
*Commonwealth v. Earltop*, 372 Mass. 199, 201-202 (1977);
*Commonwealth v. Merola*, 405 Mass. 529, 547 n.15 (1989).
Whether the relevance of those statements was far outweighed
by their potential for prejudice was a matter "entrusted to the
trial judge's discretion and [the ruling] will not be disturbed
except for palpable error." *Commonwealth v. LaSota*, 29 Mass.
App. Ct. 15, 24 (1990).

Taking the earlier recited evidence in the light most favorable
to the Commonwealth, we think the defendant's argument, that
he was entitled to a required finding of not guilty because the
Commonwealth failed to show that he compelled Jane to submit
by force and against her will or by threat of bodily injury, war-
rants no discussion beyond that set out in *Commonwealth* v.
*Kirkpatrick*, 423 Mass. at 444, and cases therein cited.[7]

During their deliberations, the jury asked whether the
defendant's threat to Jane, that he would harm her mother if she
did not do as he demanded, would constitute a threat of bodily
injury as alleged in the indictment, which essentially traced the
language of G. L. c. 265, § 22A. The trial judge's instructions
to the jury and his response to their question directed them to
determine whether the defendant's threats were sufficient to
overcome Jane's will. Those directions were in accord with
*Commonwealth v. Caracciola*, 409 Mass. 648, 651-652 (1991),
and cases therein discussed.

*Judgment affirmed.*

---

[6]In *Barrett*, 418 Mass. at 796, and *Purinton*, 32 Mass. App. Ct. at 645, the
issue of waiver of the statute of limitations was presented on a claim of inef-
fective assistance of counsel, and the question for resolution was whether bet-
ter work might have accomplished something material for the defense. Our
conclusion would be no different in this case even were the same question
before us.

[7]The defendant also complains that he was entitled to a required finding of
not guilty on the second count of the indictment, which alleged violations
against his son. Because the defendant was acquitted on that count, we do not
consider the argument. See *Commonwealth v. McCarthy*, 37 Mass. App. Ct.
113, 120 n.4 (1994).